UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Joseph Edwin Harju,

Plaintiff,

vs. REPORT AND RECOMMENDATION

Philip Morris, Inc.; R.J. Reynolds Tobacco Co.; Brown and Williamson Tobacco Corp.; B.A.T. Industries, P.L.C.; British-American Tobacco Co. Limited; B.A.T. (U.K. and Exports) Limited; Lorillard Tobacco Co.; Liggett Group, Inc.; The Council for Tobacco Research - U.S.A., Inc.; and The Tobacco Institute, Inc.,

Defendants. Civ. No. 01-2336(DWF/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 12th day of February, 2003.

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Defendants' Motion to Dismiss, and upon the Motion of the Defendant Lorillard Tobacco Company ("Lorillard") to Dismiss for Failure to

FEB 12 2003

(37)

Effect Service of Process.[1] The Plaintiff appears pro se, and in forma pauperis; and the Defendants appear by Edward B. Magarian, Esq., and Randall R. Frykberg, Esq.

For reasons which follow, we recommend that the Defendants' Motions to Dismiss be granted, in part, and we recommend that Lorillard's Motion to Dismiss for Failure to Effect Service of Process be denied.

## II. Factual and Procedural History

The Plaintiff, Joseph Edwin Harju, is currently an inmate at the Minnesota State Correctional Facility in Moose Lake, Minnesota. In his Complaint, the Plaintiff asserts claims against the manufacturers of certain tobacco products, as follows: Count One, Undertaking of Special Duty; Count Two, for Consumer Fraud; Count Three, for Unlawful Trade Practices; Count Four, for Deceptive Trade Practices; Count Five, for False Advertising; Count Six, for Restitu-

---

[1]The Joint Motion to Dismiss for failure to state a claim was filed on behalf of Philip Morris, Inc., R.J. Reynolds Tobacco Co., and Brown & Williamson Tobacco Corp. Liggett Group, Inc., has also joined in the Motion to Dismiss. Lorrillard Tobacco Co. has filed a separate Motion to Dismiss, which asserts defective service of process, and failure to state a claim defenses. The Council for Tobacco Research - U.S.A., Inc., and the Tobacco Institute, Inc. were dismissed from this action, due to the failure of the Plaintiff to effect service of process, by our Report and Recommendation of September 20, 2002, which was adopted by the District Court, the Honorable Donovan W. Frank presiding, by Order dated October 15, 2002.

tion; and Count Seven, for Restitution Unjust Enrichment. The Plaintiff also alleges a Conspiracy claim.

The Plaintiff alleges that he began using tobacco products in 1961, when he was only eight years old, and he contends that he was induced to smoke cigarettes after seeing advertisements which featured John Wayne, a star of the silver screen, who the Plaintiff regarded as a childhood hero, and role model. The Plaintiff asserts that he is addicted to the nicotine found in the Defendants' products, having become addicted to tobacco products before the labeling of those products with health warnings which, he asserts, first occurred in 1969. The Plaintiff contends that he has suffered permanent health injuries as a consequence of smoking the Defendants' cigarettes. Consequently, the Plaintiff seeks damages, and equitable relief, including damages for his increased medical expenditures, which the Plaintiff maintains are the result of the Defendants' products, and for which, he contends, he has borne the full cost.

The Plaintiff alleges that, in December of 2000, he was examined by a Dr. Ceman, at the Minnesota State Correctional Facility, Stillwater, which is located in Bayport, Minnesota. According to the Plaintiff, after examining the Plaintiff, and checking the Plaintiff's medical records, Dr. Ceman informed the Plaintiff that his medical records would support a claim against the tobacco com-

panies for injuries caused by smoking cigarettes. The Plaintiff asserts that he suffers from emphysema, severe asthma, chronic bronchitis, irregular heartbeat, chronic sinusitis, restricted blood circulation, memory loss, premature aging, reduced quality of life, reduced life expectancy, limited physical activity, and a high risk of future cancer.

The Plaintiff alleges that the tobacco industry, including the Defendants, entered into a conspiracy, as early as the 1950s, to counter the publication of scientific studies which questioned the health risks posed by the use of tobacco products, and which caused widespread public concern about the health hazards of cigarettes. The Plaintiff cites several studies, which have concluded that smoking increases the risk of certain cancers. According to the Plaintiff, confronted with the evidence presented in those studies, the presidents of the leading tobacco companies met on December 15, 1953, in New York City, with the public relations agency of Hill and Knowlton who, the Plaintiff alleges, prepared a memorandum which summarized the discussions at that meeting, in which the Defendants are said to have viewed the then current problem "as being extremely serious and worthy of drastic action." See, Complaint, at 9, ¶23. The Plaintiff suggests that, as a result of this meeting, the Tobacco Industry Research Committee ("TIRC") was conceived, which originally included five of the "Big Six" cigar-

ette manufacturers, and which was later joined by Liggett Group, Inc., in 1964.

The Plaintiff maintains that, when the industry formed its first trade association, the TIRC, the industry undertook a special duty to protect the public health, by representing that the industry, including the Defendants, would conduct, and disclose, unbiased, and authenticated research, on the health risks of cigarette smoking. Further, the Plaintiff alleges that the industry knew that a breach of that assumed duty would increase the public health risks of cigarette smoking, and the costs of health care. As related by the Plaintiff, the industry announced, to the public, the formation of the TIRC, on January 4, 1954, in newspaper advertisements which were circulated in nearly every American city with a population in excess of 50,000, and which were captioned, "A Frank Statement to Cigarette Smokers." The Plaintiff quotes the "Frank Statement" extensively, and contends that the advertisement contained promises, made by the industry, to "safeguard the public health." The Plaintiff also cites, and quotes from, subsequent public announcements in which the industry promised to safeguard the public health, by conducting research on the harmful effects of cigarettes, and by promising to disclose the results of those studies.

The Plaintiff contends that the industry did not keep its promises and, instead, misrepresented, and suppressed, the results of the research. In addition, the Plaintiff asserts that the Defendants collectively agreed to suppress further independent research, manipulated the nicotine levels in cigarettes to make the products more addictive, and suppressed the development of a safer cigarette. Specifically, the Plaintiff alleges that Liggett Group was successful in developing a safer cigarette, but never brought the product to market because other cigarette manufacturers threatened Liggett, and expressed concern that the development of a safer cigarette would imply that traditional cigarettes were unsafe.

The Defendants jointly move to dismiss the Plaintiff's claims for failure to state a claim and, in addition, seek to dismiss the Plaintiff's statutory fraud claims for failure to plead fraud with particularity. Lorillard also seeks to dismiss the claims against it for failure to effect service of process. Given this factual backdrop, we turn to the merits of the Defendants' Motions.

## III. Discussion

The Defendants seek to dismiss the Plaintiff's Complaint in its entirety, claiming that the Complaint fails to state a claim upon which relief can be granted, under Rule 12(b)(6), Federal Rules of Civil Procedure, and because, under Rule 9(b), Federal Rules of Civil Procedure, the Plaintiff has failed to plead fraud

with particularity. In addition to joining in those defenses, Lorillard also seeks dismissal based on a purported failure, on the Plaintiff's part, to effect service of process. We separately address these arguments, starting with Lorillard's assertion that the Plaintiff failed to properly effect service of process.

A. Lorillard's Motion to Dismiss for Failure to Effect Service of Process.

Lorillard contends that the Plaintiff's attempt to effect service of process was deficient, because Lorillard did not receive a copy of the Complaint until August 5, 2002, over seven and a half months after the Complaint was filed. In addition, Lorillard claims that service was deficient because the Complaint was not directed to anyone at Lorillard, but rather, was sent to a "Customer Relations" post office box. As such, Lorillard urges that the Complaint be dismissed, pursuant to Rule 12(b)(5), Federal Rules of Civil Procedure.

1. Standard of Review. Rule 4(m), Federal Rules of Civil Procedure, provides that:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court

shall extend the time for service for an appropriate period.

Neither Rule 4, nor its legislative history, defines "good cause." Lujano v. Omaha Public Power Dist., 30 F.3d 1032, 1035 (8th Cir. 1994). However, we are to construe Rule 4 liberally when the objecting party has received actual notice, and an improper service of process will not lead to dismissal if proper service can still be obtained. See, Romandette v. Weetabix Co., Inc., 807 F.2d 309, 311 (2nd Cir. 1986). Moreover, when dealing with a pro se litigant's violation of Rule 4, we exercise leniency, so that "'justice is done on the merits rather than on the basis of procedural technicalities.'" Calderon v. True, 1993 WL 413970 at *1 (N.D. Ill., October 15, 1993), quoting Patterson v. Brady, 131 F.R.D. 679, 683 (S.D. Ind. 1990); see also, Roberts v. Orleans Parish Medical Staff, 2002 WL 1022488 at *5 (May 20, 2002)("[P]ro se litigants are allowed more latitude than litigants represented by counsel to correct defects in service of process and pleadings").

Under Rule 4(c)(2), Federal Rules of Civil Procedure, an incarcerated, pro se litigant, is entitled to rely on service by the United States Marshals Service. See, Romandette v. Weetabix Co., Inc., supra at 311. Good cause exists when the failure of a pro se litigant to effect service is the fault of the Marshals Service. Id., see also, McCalmann v. Partners in Care, 2002 WL 856465 at *1

(S.D.N.Y., April 25, 2002); Hamilton v. Clerk, Appellate Div., Second Dept., 1999 WL 408716 at *3 (E.D.N.Y., June 14, 1999); Sanders v. Workman, 2001 WL 656072 at *4 (D. Del., March 26, 2001); Calderon v. True, supra at *1; Crowder v. True, 1993 WL 226296 at *2 (N.D. Ill., June 24, 1993).

2. Legal Analysis. Since the Plaintiff is an incarcerated pro se litigant, we exercise indulgence in applying the "good cause" showing required by Rule 4. The Plaintiff filed his Complaint on December 17, 2001, and on January 1, 2002, we issued an Order granting the Plaintiff's Application to proceed in forma pauperis. On January 18, 2002, the Plaintiff submitted the proper request to the Marshals Service to effect service of process upon Lorillard. See, Plaintiff's Response to Defendant Lorillard Tobacco Company's Motion to Dismiss, Ex. A. (United States Marshals Service Process Receipt and Return). The process receipt, that was issued to the Plaintiff upon his application for service of process, bears the initials of an authorized United States Marshals Deputy Clerk, and is dated January 24, 2002. Thus, the Plaintiff attempted, through the Marshals Service, to effect service of process upon Lorillard within three months of the filing of his Complaint, which is well within the 120 days required under Rule 4. However, the address which the Plaintiff provided the Marshals Service was incorrect, and that attempt at service failed. While the

the Marshals Service failed to effect service of process, any fault in that respect is attributable to the Plaintiff, and not to the Marshals. See, Calderon v. True, supra at *1; Crowder v. True, supra at *2; Jaiyeloa v. Carrier Corp., 2002 WL 1765610 at *2 (N.D.N.Y., July 22, 2002).

In Calderon, the Court held that "a prisoner need only furnish the Marshal with information necessary to identify the defendants; when the prisoner has provided this information, the Marshal's failure to serve constitutes good cause." Calderon v. True, supra at *1. However, in Calderon, the plaintiff alleged a Bivens action against a correctional facility, and certain prison officials in their individual capacities. Id. The Court reasoned that "mere identification of the defendants is sufficient because prison guards do not want prisoners to have their home addresses, and the Bureau of Prisons is reluctant to tell prisoners even the current place of employment of their former guards." Id. at *3 n. 4. Similarly, in Crowder, the Court also held that the plaintiff was only required to furnish the Marshals service with the information necessary to identify the defendants, and no more, observing that, "once that information is provided, the Marshal should be able to obtain a current business address and complete service." Crowder v. True, supra at 2. However, in Crowder, one of the defendants

was a Federal Judge and, therefore, the rationale expressed in Calderon applied with equal force.

In contrast, in a case in which the defendant was not a member of the judiciary, a correctional official, or a member of another class of protected individuals whose addresses should not be disclosed to incarcerated litigants, the Court, in Jaiyeola, refused to attribute fault to the Marshals Service for a failure to effect service of process, noting that the Plaintiff did not provide the Marshals Service with the correct name and address of the person to be served. Jaiyeola v. Carrier Corp., supra at *2.

Here, the Defendants are corporate entities, as was the defendant in Jaiyeola, and therefore, fault does not lie with the Marshals Service for any failure to effect service of process, as the Plaintiff is at fault for failing to provide the Marshals with the correct address for Lorillard. Nonetheless, Lorillard had actual notice of this litigation, and proper service of process may still be obtained. Moreover, as reflected in his attempt to effect service through the Marshals Service, as early as January of 2002, just one month after we granted the Plaintiff's Application to Proceed in forma pauperis, the Plaintiff timely sought to serve process. See, Lujano v. Omaha Public Power Dist., supra at 1035.

In addition, we find that the Plaintiff could have been misled by the Marshals Service form, which asks the applicant to pro-

vide the "name of individual, company, corporation, etc., to serve." Common sense would dictate that an applicant should provide the name of the corporation, rather than individual officers, or agents, of a corporation. Given that service of process is only effective by serving officers, or agents, of a corporation, under Rule 4(h), we find the form potentially confusing to the extent it asks for the name and address of a company or corporation, as opposed to the corporation's agent, or other individual designated to accept service of process. As a result, we find that good cause exists for the Plaintiff's failure to comply with Rule 4 and, therefore, in the interests of seeing that justice is done on the merits, rather than on the basis of procedural technicalities, we deny Lorillard's Motion to Dismiss under Rule 12(b)(5), for a failure to properly effect service of process.

Further, if proper service has not yet been effected in this litigation, the Clerk of Court shall provide the Plaintiff with a Waiver of Service of Summons form, and counsel for Lorillard shall provide the Plaintiff with the names and addresses of Lorillard's president, vice-president, and registered agent.[2] Alternatively, counsel may stipulate to the acceptance of service on Lorillard's behalf, so as to minimize any resultant delays in service of

---

[2]See, Dudley v. Texas Instruments, Inc., 2002 WL 992766 at *2 (N.D. Tex., May 13, 2002)

process. If counsel is not amenable to such an approach, then counsel shall advise the Plaintiff in order that the Marshal's Service can properly effect service upon a duly designated representative of Lorillard.

B. The Defendants' Motion to Dismiss for Failure to Plead Fraud with Particularity.

The Defendants argue that the Plaintiff's statutory fraud claims, under Minnesota Statutes Sections 325F.69, 325D.13, 325D.44, and 325F.67 -- Counts Two, Three, Four, and Five of the Plaintiff's Complaint, respectively -- should be dismissed for failure to plead fraud with the particularity required under Rule 9(b), Federal Rules of Civil Procedure. Each of the Plaintiff's statutory fraud claims is subject to the heightened pleading requirements of Rule 9(b). See, Tuttle v. Lorillard Tobacco Co., 118 F. Supp.2d 954, 963 (D. Minn. 2000)("Tuttle I"); see also Tuttle v. Lorillard Tobacco Co., 2001 WL 821831 at *2 (D. Minn., July 5, 2001)("Tuttle II"); Erickson v. Horing, 2002 WL 31163611 at *8 (Minn.App., October 1, 2002)(applying heightened pleading requirements to Minnesota Consumer Fraud Act, Minnesota Statutes Section 325F.69); but see, United Magazine Co. v. Murdoch Magazines Distribution, Inc., 2001 WL 1607039 at *12 (S.D.N.Y., December 17, 2001) (holding that false advertising claims are not fraud claims and, therefore, are not subject to Rule 9(b)); Villano Inc. v. CBS,

Inc., 176 F.R.D. 130, 131 (S.D.N.Y. 1997)(stating that a claim of false advertising does not fall within the ambit of Rule 9(b)).

Rule 9(b), Federal Rules of Civil Procedure, requires that, when pleading a claim of fraud, "the circumstances constituting fraud * * * shall be stated with particularity." As a result, the circumstances constituting fraud "must be concrete and sufficiently particularized to give Defendants notice of 'what conduct is complained of and to prepare a defense to such claim of misconduct.'" First Presbyterian Church of Mankato v. John Kinnard & Co., 881 F. Supp. 441, 445 (D. Minn. 1995), quoting Goldman v. Belden, 98 F.R.D. 733, 735 (W.D.N.Y. 1983). "Particularity," as the term is employed in Rule 9(b), "means the who, what, when, where, and how: the first paragraph of any newspaper story." DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990), cert. denied, 498 U.S. 941 (1990); see also, Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co., 48 F.3d 1066, 1069 (8th Cir. 1995), quoting Bennett v. Berg, 685 F.2d 1053, 1062 (8th Cir. 1982), cert. denied, 464 U.S. 1008 (1983)(In order to satisfy Rule 9(b), in the assertion of a claim that involves an asserted misrepresentation of fact, a plaintiff must specify "'the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.'").

In Tuttle I, the plaintiff alleged that:

> Defendants' fraudulent, misleading, and deceptive statements and practices relating to the use of smokeless tobacco and health, including intentional misrepresentations that there is no causal connection between the use of smokeless tobacco and adverse health effects and that smokeless tobacco is not addictive.

Tuttle I, supra at 964.

The Court found that such conclusory allegations failed to plead a fraud claim with the requisite particularity of Rule 9(b). Subsequent to the Court's Order in Tuttle I, the Plaintiff filed an Amended Complaint, in which the plaintiff realleged the statutory fraud claims, and the defendants again filed a Motion to Dismiss for a failure to plead fraud with particularity. In Tuttle II, the Court found that the plaintiff had properly pled fraud with particularity, explaining as follows:

> Plaintiff has provided more than sixty statements made by the Manufacturing Defendants and their trade association, STC, regarding the health effects and addictiveness of smokeless tobacco products. For most of the statements, Plaintiff has included the source, speaker, date, and, where appropriate, the location the statement was made.

Id. at *2.

Here, most of the allegations in the Complaint fall into the category of general averments which were found wanting in Tuttle I and, therefore, lack the required particularity that Rule 9(b) demands. The most specific allegation of fraud, which has been alleged by the Plaintiff, and which still falls short of the heightened plead-

ing requirement of Rule 9(b), is one in which the Plaintiff alleges as follows:

> The cigarette industry announced the formation of TIRC [Tobacco Institute Research Committee] on January 4th, 1954, with newspaper advertisements placed in virtually every city with a population of 50,000 or more, including Minneapolis, St. Paul, and Duluth, reaching a circulation of more than 43 million Americans. The advertisement was captioned "A Frank Statement to Cigarette Smokers" and was run under the auspices of TIRC with, inter alia, five of the Big Six manufacturers listed by name.

Complaint, at 11-12, ¶26.

The Plaintiff goes on to quote the content of the advertisements with specificity, but he never identifies, with any particularity, who made the alleged fraudulent statements, other than a vague reference to "five of the Big Six," without telling us which were the five involved, or whether any of the Defendants were among the five.

Thus, the Plaintiff has failed to plead fraud with particularity and, therefore, we recommend that the Defendant's Motion to Dismiss for a failure to plead fraud with particularity be granted. "With regularity," however, "we allow the nonmoving party leave to amend a pleading in opposition to a Motion to Dismiss, so as to assure that actions are resolved, to the extent allowable, on the merits of the parties' claims." Dunlap v. Chubb Life Ins. Co., 981 F. Supp. 1201, 1203 n. 1 (D. Minn. 1997), citing West Profes-

sional Education Group, Inc. v. Harcourt Brace Legal and Professional Publications, Inc., 1995 WL 4222651 at *12 (D. Minn., June 2, 1995), citing in turn, Mangan v. Weinberger, 848 F.2d 909, 911 (8th Cir. 1988)("complaint which fails to comply with Rule 8 may be dismissed * * * after allowing time to file an amended complaint."), cert. denied, 488 U.S. 1013 (1989); see also, Murr Plumbing, Inc. v. Scherer Bros. Financial Servs. Co., 48 F.3d 1066, 1070 (8th Cir. 1995); Bennett v. Berg, 685 F.2d 986, 1062 (8th Cir. 1982), modified on reh'g, 710 F.2d 1361 (8th Cir. 1983)(en banc), cert. denied, 464 U.S. 1008 (1983). Although we have substantial doubt, given the Plaintiff's conclusory, and nonspecific allegations to date, that he will be able to remedy the deficiencies of his fraud claim, we believe that he should be afforded a period of thirty (30) days in which to file an Amended Complaint, should he so choose, that will allege properly particularize any allegations of fraud, as to each Defendant. We forewarn the Plaintiff, that this allowance should not be viewed as license to resubmit the same, or similar, generalized, vague, and imprecise allegations of fraud.

C. The Defendants' Motion to Dismiss for Failure to State a Claim upon which Relief Can be Granted.

In his Complaint, the Plaintiff alleges eight separate causes of action. The Defendants challenge five of the causes -- Counts

One, Four, Six, Seven, and Eight -- on ground that the Plaintiff has failed to state a claim upon which relief can be granted. In Count One, the Plaintiff contends that the Defendants voluntarily assumed a special duty of care, based on Section 323 of the Restatement (Second) of Torts, which formulates a "Good Samaritan" basis for liability, which they purportedly breached by suppressing, and failing to disclose, the true results of research that the Defendants promised to conduct concerning the harmful effects of smoking.

In Count Four, the Plaintiff alleges a violation of the Uniform Deceptive Trade Practices Act ("DTPA"), Minnesota Statutes Section 325D.44, Subdivisions 1(5), (7), and (13), by claiming that the Defendants misrepresented the characteristics, and qualities, of their cigarettes. Next, in Counts Six and Seven, the Plaintiff seeks equitable relief, in the form of restitution, for the recoupment of his health care expenditures, as well as restitution for unjust enrichment, arising from the distribution of inequitably garnished profits that Defendants have realized from the sale of cigarettes. Lastly, in Count Eight, the Plaintiff asserts a conspiracy claim, and argues that the Defendants conspired to: restrain and suppress research on the harmful effects of smoking; misrepresent the harmful effects of smoking; and restrain and suppress the development of a safer cigarette. As to each of these

claims, the Defendants have responded that the allegations do not assert a legally viable claim and, therefore, they seek the dismissal of those Counts.

1. Standard of Review. In reviewing a Complaint under a Rule 12(b)(6) Motion, we must consider all of the facts alleged in the Complaint as true, and construe the pleadings in a light most favor-able to the Plaintiff. See, e.g., Brotherhood of Maintenance of Way Employees v. Burlington Northern Santa Fe Railroad, 270 F.3d 637, 638 (8th Cir. 2001). In addition, in assessing a Rule 12(b)(6) Motion, the Court must liberally construe a pro se Complaint. Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994). "A complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief." Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001), citing Breedlove v. Earthgrains Baking, 140 F.3d 797, 799 (8th Cir. 1998); Helleloid v. Independent School Dist. No. 361, 149 F. Supp.2d 863, 866-67 (D. Minn. 2001).

"Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." Young v. City of St. Charles, supra at 627, citing Neitzke v. Williams, 490 U.S. 319, 326-27