UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

REPORT AND RECOMMENDATION

* * * * * * * * * * * * * * * * * * *

Joseph Edwin Harju,

Plaintiff,

vs.

Philip Morris, Inc.; R.J. Reynolds Tobacco Co.; Brown and Williamson Tobacco Corp.; B.A.T. Industries, P.L.C.; British-American Tobacco Co. Limited; B.A.T. (U.K. and Exports) Limited; Lorillard Tobacco Co.; Liggett Group, Inc.; The Council for Tobacco Research-U.S.A., Inc.; and The Tobacco Institute, Inc.,

Defendants. Civ. No. 01-2336 (DWF/RLE)

* * * * * * * * * * * * * * * * * * *

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Defendants' First and Second Motions for Summary

Judgment.[1] The Plaintiff appears pro se, and the Defendants appear by Christopher V. Cotton, Esq. For reasons which follow, we recommend that the Defendants' First Motion for Summary Judgment be granted, and that the Defendants' Second Motion for Summary Judgment be denied, as moot.

## II. Factual and Procedural History

In his Complaint, which was filed on December 7, 2001, the Plaintiff asserts claims against the manufacturers of certain tobacco products, as follows: Count One, Undertaking of Special Duty; Count Two, for Consumer Fraud; Count Three, for Unlawful Trade Practices; Count Four, for Deceptive Trade Practices; Count Five, for False Advertising; Count Six, for Restitution; and Count Seven, for Restitution Unjust Enrichment. The Plaintiff also alleges a Conspiracy claim. Following our Report and Recommendation, and an Order by the District Court, on the Defendants' Motion to Dismiss, see Docket Nos. 37, and 51, the only remaining Counts are Count One and the Conspiracy claim, which has apparently been construed solely as a claim for aiding

---

[1]As a result of our Report and Recommendation of September 20, 2002, which was adopted by the District Court, the Honorable Donovan W. Frank presiding, by Order dated October 15, 2002, the Council for Tobacco Research-U.S.A., Inc., and the Tobacco Institute, Inc., were dismissed from this action, due to the failure of the Plaintiff to effect service of process upon them.

and abetting the tortious conduct of another, in light of the dismissal of the other claims. In addition, the Defendant Lorillard Tobacco Company has been dismissed for failure to effect service of process. See, Docket No. 51.

The Plaintiff alleges that he began using tobacco products in 1961, when he was only eight years old, and he contends that he was induced to smoke cigarettes after seeing advertisements which featured John Wayne, a star of the silver screen, who the Plaintiff regarded as a childhood hero, and role model. The Plaintiff asserts that he is addicted to the nicotine found in the Defendants' products, having become addicted to tobacco products before the labeling of those products with health warnings which, he asserts, first occurred in 1969. The Plaintiff contends that he has suffered permanent health injuries as a consequence of smoking the Defendants' cigarettes. Consequently, the Plaintiff seeks damages, and equitable relief, including damages for his increased medical expenditures, which the Plaintiff maintains are the result of the Defendants' products, and for which, he contends, he has borne the full cost.

The Plaintiff alleges that, in December of 2000, he was examined by a Dr. Ceman, at the Minnesota State Correctional Facility, in Stillwater, which is located in Bayport, Minnesota. According to the Plaintiff, after examining the Plaintiff, and checking the Plaintiff's medical records, Dr. Ceman informed the Plaintiff that his

medical records would support a claim against the tobacco companies for injuries caused by smoking cigarettes. The Plaintiff alleges that he suffers from emphysema, severe asthma, chronic bronchitis, irregular heartbeat, chronic sinusitis, restricted blood circulation, memory loss, premature aging, reduced quality of life, reduced life expectancy, limited physical activity, and a high risk of future cancer.

The Plaintiff alleges that the tobacco industry, including the Defendants, entered into a conspiracy, as early as the 1950s, to counter the publication of scientific studies which questioned the health risks posed by the use of tobacco products, and which caused widespread public concern about the health hazards of cigarettes. The Plaintiff cites several studies, which have concluded that smoking increases the risk of certain cancers. According to the Plaintiff, confronted with the evidence presented in those studies, the presidents of the leading tobacco companies met on December 15, 1953, in New York City, with the public relations agency of Hill and Knowlton who, the Plaintiff alleges, prepared a memorandum which summarized the discussions at that meeting, in which the Defendants are said to have viewed the then current problem "as being extremely serious and worthy of drastic action." See, Complaint, at 9, ¶23. The Plaintiff suggests that, as a result of this meeting, the Tobacco Industry Research

Committee ("TIRC") was conceived, which originally included five of the "Big Six" cigarette manufacturers, and which was later joined by Liggett Group, Inc., in 1964.

The Plaintiff maintains that, when the industry formed its first trade association, the TIRC, the industry undertook a special duty to protect the public health, by representing that the industry, including the Defendants, would conduct, and disclose, unbiased, and authenticated research, on the health risks of cigarette smoking. Further, the Plaintiff alleges that the industry knew that a breach of that assumed duty would increase the public health risks of cigarette smoking, and the costs of health care. As related by the Plaintiff, the industry announced, to the public, the formation of the TIRC, on January 4, 1954, in newspaper advertisements which were circulated in nearly every American city with a population in excess of 50,000, and which were captioned, "A Frank Statement to Cigarette Smokers." The Plaintiff quotes the "Frank Statement" extensively, and contends that the advertisement contained promises, made by the industry, to "safeguard the public health." The Plaintiff also cites, and quotes from, subsequent public announcements in which the industry promised to safeguard the public health, by conducting research on the harmful effects of cigarettes, and by promising to disclose the results of those studies.

The Plaintiff contends that the industry did not keep its promises but, instead, misrepresented, and suppressed, the results of the research. In addition, the Plaintiff asserts that the Defendants collectively agreed to suppress further independent research, manipulated the nicotine levels in cigarettes to make the products more addictive, and suppressed the development of a safer cigarette. Specifically, the Plaintiff alleges that the Liggett Group was successful in developing a safer cigarette, but never brought the product to market because other cigarette manufacturers threatened Liggett, and expressed concern that the development of a safer cigarette would imply that traditional cigarettes were unsafe.

The Defendants jointly move for Summary Judgment, and assert that the Plaintiff's claims should be dismissed because they fall outside of the statute of limitations. They further argue that there is no genuine issue of material fact on the issue of causation, because the Plaintiff has failed to submit expert reports which establish causation. In their Second Motion for Summary Judgment, the Defendants make the additional argument that Summary Judgment should be granted in their favor, because there is no genuine issue of material fact with respect to the Plaintiff's special duty claim, and therefore, the conspiracy claim fails, as there is no underlying tort to

support that claim. Given this factual backdrop, we turn to the merits of the Defendants' Motions.

III. Discussion

A. Standard of Review. Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations. See, Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); Duffy v. Wolle, 123 F.3d 1026, 1040 (8th Cir. 1997), cert. denied, 523 U.S. 1137 (1998). Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue. See, Eide v. Grey Fox Technical Servs. Corp., 329 F.3d 600, 604 (8th Cir. 2003); Philip v. Ford Motor Co., 328 F.3d 1020, 1023 (8th Cir. 2003); United Fire & Casualty Co. v. Garvey, 328 F.3d 411, 413 (8th Cir. 2003). For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a verdict for the nonmoving party. See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fenney v. Dakota, Minnesota & Eastern R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003);

Jenkins v. Southern Farm Bureau Casualty, 307 F.3d 741, 744 (8th Cir. 2002); Herring v. Canada Life Assurance, 207 F.3d 1026 (8th Cir. 2000).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Federal Rules of Civil Procedure; see also, Anderson v. Liberty Lobby, Inc., supra at 256; Eddings v. City of Hot Springs, Ark., 323 F.3d 596, 602 (8th Cir. 2003). Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, supra at 322; see also, Mercer v. City of Cedar Rapids, 308 F.3d 840, 843 (8th Cir. 2002); Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, supra at 323; see also, Bell Lumber and Pole Co. v. United

States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995); McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 510 (8th Cir. 1995); Settle v. Ross, 992 F.3d 162, 163 (8th Cir. 1993).

B. Legal Analysis. As we have previously related, the Defendants premise their Motions for Summary Judgment on three primary bases, which are as follows: the Plaintiff's claims fall outside of the statute of limitations; there is no genuine issue of material fact on the issue of causation, because the Plaintiff has failed to submit expert reports which establish causation; and there is no genuine issue of material fact with respect to the Plaintiff's special duty claim, and therefore, the conspiracy claim fails, as there is no underlying tort to support that claim. However, since we find that the Plaintiff's remaining claims fail, as a matter of law, because he has not established causation, through expert evidence, we need not consider the Defendants' other arguments, and we direct our attention to the issue of causation, in the context of the Plaintiff's special duty claim.

"A defendant in a negligence suit is entitled to summary judgment when the record reflects a complete lack of proof on any of the four essential elements of the negligence claim," inclusive of the following: "(1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) the breach of the duty being the proximate

cause of the injury." Funchess v. Cecil Newman Corp., 632 N.W.2d 666, 672 (Minn. 2001)[citation omitted]; see also, State of Minnesota v. Philip Morris, Inc., 551 N.W.2d 490, 493 (Minn. 1996). For these purposes, the Defendants only challenge the Plaintiff's evidence on the fourth element -- namely, the causation of his injuries.

Here, the Plaintiff contends that he has suffered permanent health injuries, as a consequence of smoking the Defendants' cigarettes. The Defendants argue that the Plaintiff's claims fail, because he cannot meet his burden of proving, by a preponderance of the evidence, that cigarettes caused his specific injuries. The Defendants maintain that expert testimony is required to prove causation because the case involves complex medical factors, which are outside the realm of the average Juror's knowledge.

An "[e]xpert opinion is required to prove causation if the issue is outside the realm of common knowledge." Gross v. Victoria Station Farms, Inc., 578 N.W.2d 757, 762 (Minn. 1998). As the Minnesota Supreme Court has elaborated, "[w]here a question involves obscure and abstruse medical factors such that the ordinary lawman cannot reasonably possess well-founded knowledge of the matter and could only indulge in speculation in making a finding," a plaintiff must produce "expert testimony, based upon an adequate factual foundation that the thing alleged to have caused the

result not only might have caused it but in fact did cause it." Id. [internal quotations omitted]; see also, Willert v. Ortho Pharmaceutical Corp., 995 F. Supp. 979, 983 (D. Minn. 1998); Johnson v. Zimmer, Inc., 2004 WL 742038 at *6 (D. Minn., March 31, 2004)("Under Minnesota law, expert testimony is required to prove causation in cases involving complex medical issues with which a jury is unlikely to have experience.").

We find that the specific medical injuries which are at issue here, require expert opinion evidence, because the cause of the Plaintiff's numerous illnesses is beyond the knowledge of the ordinary layperson. See, Goeb v. Tharaldson, 615 N.W.2d 800, 816-17 (Minn. 2000)(granting Summary Judgment for the defendant, where the plaintiffs did not provide expert testimony, which linked insecticide to their illness); Willert v. Ortho Pharmaceutical Corp., supra at 983 (finding that expert testimony was necessary to establish that a particular medication caused the plaintiff's illness, and granting summary judgment for the defendant, in the absence of such expert evidence); see also, In re Baycol Products Litig., 321 F. Supp.2d 1118, 1126 (D. Minn. 2004)("[T]his Court joins with those courts that have held personal injury cases involving pharmaceuticals, toxins or medical devices involve complex questions of medical causation beyond the understanding of a lay person.")[citations omitted]. The Plaintiff has not designated any experts to testify at Trial, and the Plaintiff's expert

deadline has long since passed. See, Pretrial Schedule [Docket No. 72], at p. 4 ("The Plaintiff's expert disclosures shall be made on or before April 30, 2004."). Likewise, the deadlines for filing Motions, both nondispositive and dispositive, have elapsed. Id. at 2 and 5.

The Plaintiff appends the 2004 United States Surgeon General's Report on the effects of cigarette smoking, and requests that we take judicial notice of it, as adequate proof of causation. He also notes his pauper status, and inquires as to our authority to appoint someone from the Surgeon General's Office to testify as to the validity of the Report. Notably, while the Surgeon General's Report discusses a connection between smoking and certain diseases, as a general proposition, it does not address whether the Plaintiff's specific illnesses were caused by smoking, which is what the Plaintiff must demonstrate, in order to succeed on his claims.

We briefly note that, in a case involving Minnesota Statutes Section 145.682, which requires an Affidavit of expert review in malpractice cases, our Court of Appeals noted that plaintiffs might be able to establish their causes of action through means other than an expert witness, such as medical records, medical treatises, or by deposing, or examining as adverse witnesses, the defendants' doctors. Chizmadia v. Smiley's Point Clinic, 873 F.2d 1163, 1165 (8th Cir. 1989). However, the Plaintiff has

not submitted any medical reports to the Court for our consideration, nor has he suggested any alternative methods to establish causation, other than the Surgeon General's Report, which we have previously addressed. See, Chizmadia v. Smiley's Point Clinic, 768 F. Supp. 266, 268-71 (D. Minn. 1991)(dismissing the case with prejudice because the plaintiff "fail[ed] to produce any evidence to support the essential element of causation," and had "not made any showing that he could establish his case by the other means suggested").

Since the Plaintiff has raised the issue of his pauper status, we further note that several Courts have held that, under the Federal in forma pauperis Statute, see Title 28 U.S.C. §1915, "a district court has no authority to appoint an expert witness." Pedraza v. Jones, 71 F.3d 194, 196-97 (5th Cir. 1995), citing Boring v. Kozakiewicz, 833 F.2d 468 (3rd Cir. 1987), cert. denied, 485 U.S. 991 (1988)(Section 1915 does not provide for the payment or waiver of fees for expert witnesses). Although the Court recognized that Rule 706, Federal Rules of Evidence,[2] allows a Court to appoint an expert in certain circumstances, it found that such appointment was inappropriate

[2]Rule 706 provides, in pertinent part, that "[t]he court may on its own motion or on the motion of any party enter an order to show cause why expert witnesses should not be appointed * * *."

where the plaintiff had made no showing that he had attempted to procure an expert, had never submitted medical records, had never requested the appointment of an expert pursuant to that Rule, and had requested an appointment only for his own benefit. Id., at 197 n. 5. Here, we are presented with nearly identical circumstances, which weigh against the appointment of an expert under Rule 706, and we further find that the Plaintiff is not entitled to the appointment of one, under Section 1915. The simple fact is that this Court does not have a fund to draw upon so as to appoint an expert nor, on this Record, are we presented with any showing that the Defendants should bear the Plaintiff's litigation expenses, by funding the appointment of an expert. In the usual case, where the merits of a plaintiff's claim, and its correlative likelihood of success warrant it, a retained attorney would advance funds for the retention of expert opinion evidence. Here, however, the Plaintiff appears to have been unable to retain legal counsel to represent him on his claims against the Defendants.

We find that the Plaintiff has failed to establish the element of causation, by not producing any expert testimony to demonstrate that his illnesses are the result of smoking cigarettes. The Plaintiff has neither produced an expert witness, or formally moved for the appointment of one, nor has he brought forth any other evidence, which might establish the causation of his specific injuries, through other means, such as by

his medical records. Further, we decline to appoint an expert, pursuant to Rule 706, where, as here, the Plaintiff not shown any attempts to procure his own expert, he has never submitted any medical records, and he has never formally moved for the appointment of an expert, pursuant Rule 706. Accordingly, we recommend that the Defendants' First Motion for Summary Judgment be granted, because the Plaintiff has failed to establish the essential element of causation, and we further recommend that the Defendants' Second Motion for Summary Judgment be denied, as moot.

NOW THEREFORE, It is --

RECOMMENDED:

1. That the Defendants' First Motion for Summary Judgment [Docket No. 94] be granted.

2. That the Defendants' Second Motion for Summary Judgment [Docket No. 123] be denied, as moot.

Dated: February 8, 2005

s/Raymond L. Erickson

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

## NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than February 25, 2005,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than February 25, 2005,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.